## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **HERLING TROTTER,** *et al.*, | * | |
| **Plaintiffs** | * | |
| **v.** | * | **CIVIL No. 11-3422-JKB** |
| **KENNEDY KRIEGER INSTITUTE, INC.,** *et al.*, | * | |
| | * | |
| **Defendants** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

In Re:    **Kennedy Krieger's Motion to Dismiss (ECF No. 33)**
**Hartford's Motion to Dismiss (ECF No. 40)**
**Plaintiffs' Motion to Strike (ECF No. 48)**

Mrs. Herling Trotter, acting on her own behalf and as representative of the estate of her deceased husband, Richard Noel, ("Plaintiffs") brought this suit against Mrs. Trotter's employer, Kennedy Krieger Institute, Inc., and her alleged insurance carrier, Hartford Life and Accident Insurance Company, ("Defendants")[1] alleging breaches of fiduciary duty and entitlement to life insurance benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) & (a)(3).  Now pending before the Court are motions to dismiss by both Defendants as well as Plaintiffs' motion to strike a declaration submitted by Hartford in support of its motion.  The issues have been briefed and no oral argument is required.  Local Rule 105.6. For the reasons set forth below, Kennedy Krieger's Motion to Dismiss (ECF No. 33) will be GRANTED IN PART and DENIED AS MOOT IN PART; Hartford's Motion to Dismiss (ECF

---

[1] Other "Hartford"-related entities named in the caption are not germane to the background of the case or to this motion.

No. 40) will be DENIED; and Plaintiffs' Motion to Strike (ECF No. 48) will be DENIED AS MOOT.

## I.   BACKGROUND

### A.   Case Facts

Mrs. Trotter has worked for the Kennedy Krieger Institute since 2001.  As part of her employee benefits package, she had an option to purchase certain insurance policies from Hartford through Kennedy Krieger's group benefits plan.  In January of 2003, Mrs. Trotter allegedly submitted an application to Hartford for enrollment of her husband ("the Deceased") in a spouse life insurance policy ("the Policy").  Then, without further communication regarding the status of her application, Kennedy Krieger began deducting policy premium payments of $3.33 from each of Mrs. Trotter's paychecks.  In April of 2005, Mrs. Trotter requested an increase in the policy coverage to $50,000.00.  Kennedy Krieger accordingly increased her deductions to $9.46 per paycheck.  Mrs. Trotter continued to pay these premiums until August 13, 2009, when her husband died.

Shortly after her husband's death, Mrs. Trotter allegedly submitted a claim to Kennedy Krieger for payment under the Policy.  In October of 2009, she received a "declination letter" from Kennedy Krieger advising her that Hartford was unable to process the claim because (according to Hartford) she had failed to submit a Personal Health Statement for the Deceased when she applied to enroll in the Policy, and that, consequently, the Deceased had never been "officially approved" for coverage.  (Declination Letter, ECF No. 31-2, Ex. B).  The letter also contained an offer to refund Mrs. Trotter's premium payments.

After unsuccessfully seeking assistance from her supervisor, Mrs. Trotter retained counsel, who wrote to Kennedy Krieger and demanded that the claim be paid.  Kennedy Krieger

retained its own counsel, who advised Mrs. Trotter's counsel that Kennedy Krieger was attempting to persuade Hartford to pay the claim and suggested that Mrs. Trotter sign a release for the Deceased's medical records so that it could show Hartford that the Deceased would have been insurable at the time Mrs. Trotter applied for enrollment in the policy.  Mrs. Trotter signed the release and Kennedy Krieger obtained the relevant records.  Kennedy Krieger's counsel then sent a letter to Mrs. Trotter stating that the Deceased's medical records showed that in 2002, before Mrs. Trotter submitted her application, the Deceased had a history of high blood pressure, diabetes, hypertension, and hyperlipidemia, which would have made him uninsurable, even if Mrs. Trotter had submitted all the necessary forms.  (Settlement Letter, ECF No. 31-10, Ex. J). The letter concluded that Mrs. Trotter was not entitled to any life insurance benefits from Kennedy Krieger, but offered her $2,500.00 for the release of her claim.  Mrs. Trotter declined.

### B.      Procedural History

On October 27, 2011, Plaintiffs filed a complaint in the Circuit Court for Baltimore City, raising state common law claims for breach of contract, breach of fiduciary duty, and civil conspiracy.  Defendants removed the case to this Court on the grounds that the claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  (Notice of Removal, ECF No. 1).  Defendants then moved to dismiss the complaint on the grounds that, when properly construed as an ERISA action, it failed to state a claim.  The Court found that Plaintiff's claims were completely preempted by ERISA but, rather than dismissing the case, gave Plaintiffs leave to amend the complaint to reformulate their claims under the relevant ERISA provisions.  (Order, ECF No. 28).  Plaintiffs subsequently filed two amended complaints, the second of which (ECF No. 35) is now the subject of renewed motions to dismiss by both Defendants (ECF Nos. 33 & 40).  In its Reply brief in support of its motion to

dismiss, Hartford submitted a declaration from one of its employees, stating that Hartford never received a claim from Mrs. Trotter. Plaintiffs have moved to strike the declaration on the grounds that materials outside the pleadings cannot be considered on a motion to dismiss. (ECF No. 48).

## II.    LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atlantic v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 129 S.Ct. at 1950.

## III.    ANALYSIS

### A.    Kennedy Krieger's Motion to Dismiss

Count I of the Second Amended Complaint ("SAC") asserts a claim for life insurance benefits against both Defendants. Kennedy Krieger asks the Court to dismiss this claim (as against it) on the grounds that it is not a proper party defendant. Specifically, Kennedy Krieger alleges that the Policy confers sole authority on Hartford to grant or deny benefits and that,

accordingly, only it can be held liable in an ERISA action under § 1132(a)(1)(B).  Plaintiffs respond that although the Policy purports to give Hartford sole authority in this area, Kennedy Krieger had *de facto* authority to decide benefits claims, as evidenced by its correspondence with Mrs. Trotter, which they allege shows Kennedy Krieger to be acting unilaterally.  For the reasons explained below, the Court finds that Kennedy Krieger is not a proper party defendant to Plaintiffs' claim for benefits.

The law in this District is clear that the only proper party defendant to an ERISA action for benefits is "the entity which holds the discretionary decision-making authority over the denial of ERISA benefits." *Ankney v. Metropolitan Life Ins.*, 438 F.Supp.2d 566, 574 (D. Md. 2006) (citing *Briggs v. Marriott Int'l, Inc.*, 368 F.Supp.2d 461, 471-72 (D. Md. 2005), *affirmed by* 205 F.App'x. 183 (4th Cir. 2006)).  In this case, the Policy states unequivocally that Hartford, as claims fiduciary, has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." (Policy at 30, 38, ECF No. 33-2, Ex. A).  Plaintiffs have not identified any provision of the Policy suggesting that Kennedy Krieger retains any authority of its own to decide claims.  They maintain, however, that notwithstanding the Policy language Kennedy Krieger exercised *de facto* authority to decide Mrs. Trotter's claim when it determined that the Deceased would have been uninsurable because of his medical history.  The Court rejects this argument for two reasons: (1) Plaintiffs have cited no authority, and the Court is aware of none, which states that an employer's conduct, rather than the terms of a plan or policy, determines which entity has the contractual authority to decide claims; and, (2) even if there were such authority, nothing in the SAC or the correspondence between Plaintiff and Kennedy Krieger raises a plausible inference that Kennedy Krieger

5

exercised any discretionary authority to decide Plaintiffs' claim.   Rather, the correspondence shows exactly the opposite.  For example:

> [A]fter we have the applicable facts, if Hartford is still unwilling to pay the claim, we can discuss how to resolve the matter.

(Email from KKI's counsel to Plaintiffs' Counsel of 7/23/2010, ECF No. 31-7, Ex. 7).

> Kennedy Krieger has been asking Hartford to cover the claim, and in connection with its efforts, it would be helpful to be able to show that Ms. Trotter's husband was insurable in the fall of 2002 and 2003.

(Letter from KKI's counsel to Plaintiffs' counsel of 9/29/2010, ECF No. 31-8, Ex. 8).

The only plausible inference to be drawn from these communications is that Kennedy Krieger viewed Hartford as possessing discretionary authority to grant or deny Mrs. Trotter's claim and that it was attempting to persuade Hartford to exercise that discretion in her favor.  If, as Plaintiffs allege, Kennedy Krieger ultimately decided that further efforts in this regard would be futile, due to the Deceased's medical history, that in no way constitutes a "denial" of the claim.

For these reasons, the Court finds that the facts alleged in the SAC do not raise a plausible inference that Kennedy Krieger had any authority under the Policy to make benefits determinations or that it played any substantive role in the decision to decline Mrs. Trotter's claim.  Therefore, Kennedy Krieger's motion to dismiss will be GRANTED with respect to Plaintiffs' claim for benefits.  Kennedy Krieger has withdrawn its motion with respect to the claims in Count II of the SAC, so the motion in that regard will be DENIED AS MOOT.

### B.   Hartford's Motion to Dismiss

Hartford alleges that Plaintiffs have not exhausted their administrative remedies because: (1) Mrs. Trotter never properly submitted a claim for benefits; and (2) even if she did submit a claim, she did not pursue available appeal procedures.  Hartford argues that Plaintiffs' claim for

benefits should therefore be remanded to it for the appropriate administrative review.  For the reasons explained below, the Court finds this argument unpersuasive.

First, the SAC plainly alleges that Mrs. Trotter submitted a claim for benefits[2] and, in the context of this motion to dismiss, the Court must accept that allegation as true.  Hartford argues, however, that other allegations in the SAC and supporting documentation establish that Mrs. Trotter in fact submitted her claim form to Kennedy Krieger and not to it.  The Court does not see why this is significant.  The Policy, which Hartford itself drafted, advises participants that they may submit claim forms to their employer rather than to Hartford directly.

> **To whom and how are benefits paid?**
> A completed claim form, a certified copy of the death certificate and Your enrollment form must be sent to the Employer or Us.  When the required claim papers are received and approved by Us, the Amount of Life Insurance will be paid.

(Policy at 36, ECF No. 40-4, Ex. 1 Part 2) (emphasis added).

Hartford does not dispute that Mrs. Trotter submitted a claim form to Kennedy Krieger (the employer and plan administrator), but it insists that the form was never forwarded to it.  The correspondence between Kennedy Krieger, Mrs. Trotter, and Mrs. Trotter's attorney, however, which are incorporated into the SAC, clearly indicates otherwise.  *See, e.g.,* (Declination Letter, ECF No. 31-2, Ex. B):

> We have been researching the claim extensively with Hartford Life.  We have been notified by Hartford that even though you submitted Personal Health Statement forms for yourself on two occasions (2003 and 2006) you never submitted Personal Health Statement forms for your husband.  Hartford has sent us copies of your forms.
>
> Since the Personal Health Statements for your husband's coverage were never submitted, he was never officially approved by Hartford.  Hartford is consequently unable to process your claim.

---

[2] "Shortly after her husband's death, Plaintiff Trotter gave Defendants due notice and proof of the death of Richard Noel and demanded payment of $50,000.00 by way of a claim form which she completed."  (2nd Am. Compl. at 4, ¶ 16, ECF No. 35).  Contrary to what Hartford has argued, this is an allegation of plain fact, not a legal conclusion.

These allegations are plainly sufficient to raise a plausible inference that Plaintiff properly submitted her claim to Hartford *via* her employer, as prescribed in the Policy. The Court is now concerned only with assessing the adequacy of the pleading and has no occasion to resolve disputes over material facts.

The Court also rejects Hartford's argument that Plaintiffs have not adequately pled that they exhausted their administrative remedies or that pursuing those remedies would have been futile. In the first place, contrary to Hartford's understanding, ERISA plaintiffs are not obligated to plead exhaustion or futility; failure to exhaust is an affirmative defense that must be pled and proved by the defendant.[3] Moreover, while a court may dismiss a complaint where a meritorious affirmative defense appears on its face,[4] the Court does not find that to be the case here.

While ERISA plaintiffs are generally required to exhaust their administrative remedies before filing suit, district courts have discretion to waive this requirement if: (1) the plaintiff was denied "meaningful access" to internal review procedures; or (2) following those procedures would have been futile. *Vogel v. Independence Federal Sav. Bank*, 728 F.Supp. 1210, 1224 (D. Md. 1990). The Court finds that the facts alleged in the SAC and the attached correspondence support a plausible inference that both exceptions apply. The plain implication of these documents is that Kennedy Krieger forwarded Mrs. Trotter's claim form to Hartford and that

---

[3] In *Jones v. Bock*, 549 U.S. 199 (2007), the U.S. Supreme Court addressed the exhaustion requirement in the context of prisoner litigation under the PLRA. It held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id*. at 127. Several courts have subsequently applied this holding in the ERISA context. *See, e.g.*, *Wilson v. Kimberly-Clark Corp.*, 254 F.App'x. 280, 287 (5th Cir. 2007); *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F.Suppp.2d 938, 969 (E.D. Tex. 2011); *Zappley. v. The Stride Rite Corp.*, No. 2:09-CV-198, 2010 WL 234713, at *4 (W.D. Mich. Jan. 13, 2010); *Gunn v. Bluecross Blueshield of Tennesse, Inc.*, Civil Case No. 1:11–CV–183, 2012 WL 1711555, at *4 (E.D. Tenn. May 15, 2012). Furthermore, although it appears that neither this Court nor the Fourth Circuit has yet addressed the question of *Bock*'s application to ERISA, this Court's practice is already consistent with such application. *See J.J. Crewe & Son, Inc. Profit Sharing Plan v. Talbot*, Civil Action No. ELH–11–2871, 2012 WL 1994778, at *11 (D. Md. June 1, 2012) (finding resolution of exhaustion issue in ERISA case "inappropriate" at motion-to-dismiss stage).
[4] *Gainsburg v. Steben & Co., Inc.*, 838 F.Supp.2d 339, 341-42 (D. Md. 2011).

Hartford refused to process the claim on the grounds that it had never issued a life insurance policy for the Deceased.  An insurer's refusal to process a claim is by definition a denial of "meaningful access" to its claims procedures.  And, the Court cannot see what possible purpose an appeal could have served when Hartford refused to consider the claim in the first place, as there would have been nothing to review.  The Court is thus quite satisfied that Plaintiffs have adequately pled circumstances that, if true, would excuse them from fulfilling the exhaustion requirement.  For these reasons, Hartford's motion to dismiss will be DENIED.  This does not, of course, dispose of the exhaustion issue in this case.  The dispute as to whether Mrs. Trotter really did file a claim is still alive and Hartford has every right to argue its position again at summary judgment or at trial.

### C. Plaintiffs' Motion to Strike

In support of its Reply brief, Hartford submitted a declaration from its "Claims Team Leader," Kenneth Malley, who states that after conducting a search of Hartford's records he was unable to find any record of a claim form or appeal being submitted in connection with the Deceased or of Hartford ever communicating with Mrs. Trotter or her attorney about such a claim.  (Malley Dec., ECF No. 46-1, Ex. A).  Plaintiffs moved to strike the declaration on the grounds that the Court may not consider evidence outside the pleadings and supporting documents on a motion to dismiss.  In the alternative, Plaintiffs requested leave to file a sur-reply.  In response, Hartford argues that motions to dismiss for failure to exhaust administrative remedies are not ordinary 12(b)(6) motions and that, in considering them, a court may properly look beyond the pleadings.  In support, Hartford cites one published case from the Ninth Circuit, *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003), and one unreported case from the Central District of California, *Foster v. Blue Shield of California*, Civ. No. 05-03324, 2009 U.S.

Dist. LEXIS 466619, at **9-10, 2009 WL 1586039 (C. D. Cal.  June 3, 2009).  Whatever weight these cases cary in California, the Court finds that, as discussed in footnote 3, *supra*, there is a much greater weight of authority from other jurisdictions to the contrary.  Accordingly, the Court has declined to consider Mr. Malley's declaration in deciding Hartford's motion.  Moreover, even if the Court had considered the declaration, its ruling would have been unaffected.  In light of the correspondence from Kennedy Krieger, which clearly indicates that Hartford was aware of Mrs. Trotter's claim and that it refused to process it, the declaration would merely have confirmed the existence of a dispute of material fact that would require discovery to be properly resolved.  Plaintiffs' motion to strike the declaration will therefore be DENIED AS MOOT.

## IV.  CONCLUSION

Accordingly, an order shall issue GRANTING IN PART and DENYING AS MOOT IN PART Kennedy Krieger's Motion to Dismiss (ECF No. 33); DENYING Hartford's Motion to Dismiss (ECF No. 40); and DENYING AS MOOT Plaintiffs' Motion to Strike (ECF No. 48).

Dated this 22nd day of August, 2012

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge